IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SONJA L. ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-0371-CV-W-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

Plaintiff was born in May 1973, has a high school education, and received certification as a nurse's aide. She filed her application for benefits in May 2006, alleging an onset date of November 1, 2005. Her claim was denied at the administrative levels, and an initial hearing was held in October 2007. The hearing was continued to allow Plaintiff to reconsider her decision to proceed without counsel and to allow an opportunity to solicit testimony from a medical expert. The supplemental hearing was held in January 2008.

The ALJ's opinion is extremely thorough – in fact, it is the most thorough opinion from an ALJ the undersigned has seen in nearly fifteen years on the bench. This is noteworthy because Plaintiff's challenges are based on her differing interpretations of the Record and factual findings. The ALJ's factual determinations are entitled to deference. See, e.g., Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001). "[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the

opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984). However, if the Record can be fairly read to support two inconsistent positions, the Court must defer to the ALJ's findings. E.g., Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); Howard, 255 F.3d at 581.

Plaintiff's primary complaint was pain in her joints and back. X-rays of Plaintiff's left knee in November 2004 revealed normal findings. Physical examination in March and May of 2005 revealed nothing amiss. Another x-ray and an MRI in March 2006 were normal. An MRI performed on her shoulder in April 2006, which revealed a possible tendon tear. An EMG revealed mild to moderate carpal tunnel syndrome, but Plaintiff also demonstrated full and equal motor strength in her upper extremities. An x-ray and MRI of Plaintiff's spine were normal.

In May 2006, Plaintiff underwent nerve release surgery on her left hand for carpal tunnel syndrome. She also underwent an arthroscopic procedure on her left shoulder, but no definitive tear was identified. Her doctor, Dr. Larry Frevert, restricted her from working because the surgeries precluded her from lifting patients as required by her former job as a home health attendant.[1] One week after the surgery, Dr. Frevert noted Plaintiff's pain had improved and instructed her to begin physical therapy. R. at 538. On July 12, 2006, Dr. Frevert noted Plaintiff's range of motion was "good" but that she needed to increase her strength. R. at 532-34.

---

[1] Despite Plaintiff's allegation that she became disabled in November 2005, the ALJ found Plaintiff engaged in substantial gainful activity until May 2006. Plaintiff does not specifically challenge this determination. She does allege the ALJ's findings should not bear on her credibility; while this is a minor part of the credibility analysis, the Court notes the Record supports the ALJ's finding that Plaintiff was less than forthcoming about her work history.

A mere two days later, Plaintiff went to Dr. Mark Greenfield complaining of persistent pain in her left shoulder and arm, back, and head – all of which she rated as a "9" on a scale of 1-10.  There is no record Plaintiff made these complaints to Dr. Frevert, even though he was the doctor who had operated on her shoulder and arm.  Dr. Greenfield observed tenderness and muscle spasms in Plaintiff's lower back, but only a mild restrictions on her range of motion.  His other findings were normal.  His observations about her mental state indicated nothing abnormal or of concern.  Dr. Greenfield believed Plaintiff suffered from lumbar raradiculopathy even though tests for this condition were negative and revealed no abnormalities in her spine.[2]  He administered an epidural injection for Plaintiff's back pain.  R. at 511-15.  On July 20, Plaintiff saw Dr. Richard Rattay, complaining of knee pain that was constant and interfered with her sleep – something she had not mentioned to Dr. Greenfield.  Plaintiff returned to Dr. Greenfield on July 24, reported some improvement from the epidural, and received another injection.  She did not mention her knee problems.  Dr. Greenfield adhered to his original diagnosis (despite the continued absence of clinical findings to support it).  That same day, Plaintiff saw Dr. Scott Goodman with regard to her headaches.  She had recently been prescribed Topamax, and Plaintiff told Dr. Goodman that she had not had any headaches since starting this medication and denied experiencing any side effects.  Dr. Goodman reported the muscle size, tone and strength in Plaintiff's upper extremities were normal, and that Plaintiff had normal motor coordination and gait.  R. at 560-62.

On July 27, Plaintiff followed up with Dr. Rattay regarding her knee pain.  Dr. Rattay performed a variety of tests on Plaintiff's knee and back, all of which were normal. R. at 557-59.  An MRI revealed mild effusion, problems with her cartilege, and degenerated marrow.  R. at 684.  Plaintiff underwent an arthroscopic procedure that was deemed successful.  R. at 555-56.

---

[2]Lumbar radiculopathy refers to pain caused when a spinal nerve root is impinged by a disc (or the narrowing of disc space).  Thus, it is diagnosable with objective medical tests.

3

In September 2006, Plaintiff told Dr. Greenfield that her back pain had improved: it was no longer constant, when it existed it was at a level of 4 out of 10, her sleep had improved, and she did not believe her activities were limited. Physical examination revealed decreased tenderness, improved range of motion, and no abnormalities in gait or neurological functioning – yet, Dr. Greenfield adhered to his diagnosis of a nerve-related condition. R. at 552-54.

In October 2006, Plaintiff went to Swope Parkway Health Center complaining of sadness, crying spells, feelings of hopelessness and helplessness, paranoia, and auditory hallucinations. The severity of these previously unmentioned conditions, their stark contrast to observations made by Plaintiff's doctors, and their timing,[3] caused the ALJ to be suspicious. A GAF score of 40 was assigned based on Plaintiff's complaints. R. at 397.

In December 2006, Plaintiff told Dr. Goodman her headaches had returned – but she also admitted she was not taking Topamax as prescribed. He told her to take her medication. Plaintiff also returned to Swope Parkway Health Center for a follow-up regarding her depression; she did not claim to be suffering the extreme problems described in her initial visit – although she did claim "suicidal ideation but no intentions." R. at 396. Plaintiff then returned to Dr. Goodman, reporting she was still experiencing headaches. An EEG and an MRI were both normal. Dr. Goodman added Imitrex to the Topamax.

In January 2007, complained of pain and numbness in her right upper arm. Tests revealed mild carpal tunnel syndrome but normal sensory ability and motor strength, and she was told to wear a wrist brace. Tellingly, Plaintiff denied any mental problems. R. at 658, 661, 664, 665. However, approximately one week later, Plaintiff returned to Swope Parkway Health Center and reported depression and auditory and visual hallucinations. R. at 548. Plaintiff complained again about her right arm in April 2007, but again was told she had normal functioning. R. at 641-43. She complained again in May, at which

---

[3]The ALJ noted these complaints were registered one week after Plaintiff requested a hearing to review the initial denial of her claims, suggesting Plaintiff was motivated to "improve" her application.

4

time she confirmed to the doctor that she had surgery on her left arm for a similar condition and that she had responded "quite well." R. at 663. Surgery was performed on her right arm.

In June, Plaintiff attended a therapy session at Truman Medical Center ("TMC"), where she reported experiencing auditory hallucinations since her youth and visual hallucinations and difficulty distinguishing reality for an unstated period of time. Upon examination, the psychologist assessed Plaintiff's GAF at 50. R. at 720-29. In July, Plaintiff returned to TMC and reported "vague" descriptions of her condition. She reported being "sad, angry and scared" due to a recent diagnosis of lupus – but she was not diagnosed with lupus. In contrast to her visit the month before Plaintiff denied visual hallucinations and reported two actual suicide attempts in the preceding four months. Her GAF score was 55-60. R. at 716-19.

In August, Plaintiff reported her right arm was worse following the surgery. The doctor showed her the notes from her prior visit when she admitted to improvement; Plaintiff then edited her story to claim that she had injured it one month prior while lifting groceries. Diagnostic testing revealed a full range of motion and intact neurological functioning and only mild carpal tunnel syndrome with no evidence of continuing nerve damage or minimized functioning. R. at 625-27.

In December, Plaintiff had a follow-up appointment for her knee. She reported substantial improvement in her knee following surgery and denied any other complaints. During a subsequent visit Plaintiff demonstrated a good range of motion and x-rays revealed no abnormalities. R. at 731-35.

The preceding summary does not incorporate every contact between Plaintiff and a medical care provider. It also does not document all of the inconsistencies identified by the ALJ. Some are mentioned in detail and others (e.g., the issue regarding lupus) are alluded to. Other inconsistencies include observations by doctors that were inconsistent with Plaintiff's claim of significant depression and Plaintiff's claims of other medical conditions and treatments that were not documented. It is sufficient for present purposes to note that there are many such inconsistencies. This is significant in light of the standard used to evaluate subjective complaints.

> The adjudicator must give full consideration to all of the evidence
> presented relating to subjective complaints, including the claimant's prior
> work record, and observations by third parties and treating and examining
> physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective
> complaints solely on the basis of personal observations. Subjective
> complaints may be discounted if there are inconsistencies in the evidence
> as a whole.

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). In this case, Plaintiff's reporting of conditions that did not exist, Plaintiff's failure to consistently report conditions she claims are disabling, Plaintiff's contradictory statements, the objective medical findings, and observations made by medical professionals provides ample justification for the ALJ to disbelieve Plaintiff's testimony.

Plaintiff identifies portions of the Record that tend to support her claims. The presence of isolated favorable documents does not require the ALJ to credit Plaintiff's testimony. Substantial evidence supports the ALJ's conclusion. The Court also notes the records Plaintiff cites are not as conclusive as she suggests. She relies on Dr. Greenfield's treatment, but the ALJ explained the lack of confirming nerve tests rendered Dr. Greenfield's diagnosis was unworthy of credence. The Record documents Plaintiff's improvement following carpal tunnel surgery, so Plaintiff's condition before the surgery is of little consequence. Finally, Plaintiff points out that some of her medications are known to have side effects – but Plaintiff denied suffering from side effects.

Plaintiff also faults the ALJ for failing to accord controlling weight to the opinion of Dr. David Dembinski, whom she claims was her treating physician. The ALJ's decision is justified on a myriad of grounds. First, Dr. Dembinski saw Plaintiff twice in 2007: April 27 and October 11. This does not make him a treating physician to whom deference is owed. 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i); Casey v. Astrue, 507 F.3d 687, 691-92 (8th Cir. 2007); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

6

Second, Dr. Dembinski's opinion is that Plaintiff "is permanently and completely disabled." R. at 730. This is a vocational opinion, not a medical opinion; it falls outside Dr. Dembinski's expertise and is not entitled to deference. E.g., House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007); Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002). Finally, while a treating physician's opinion is entitled to deference, this general rule is not ironclad. A treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, Dr. Dembinski's opinion is both lacking support and stands in conflict with the bulk of the evidence in the record.

Plaintiff's final argument is that her case should be remanded in light of a favorable decision issued in a subsequent benefit application. Plaintiff filed new applications the day after receiving the ALJ's opinion in this case, and those applications were successful. The Court has reviewed the favorable opinion and notes that it rests on medical conditions that were not involved in this case and that arose much later than the time period covered by this case. Accordingly, the Court concludes the subsequent events are not material to this case and remand is not justified. Cf. Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000).

The ALJ considered all of the medical evidence as well as Plaintiff's testimony, and her final decision is supported by substantial evidence in the record as a whole. The ALJ did not fail to consider any facts or factors that she was obligated to consider, and she properly declined to defer to Dr. Dembinski. Finally, the Court concludes a remand is not justified. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: September 9, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT